Wolfgang A. Dase (WD-2646)
**FLEMMING ZULACK WILLIAMSON ZAUDERER LLP**
One Liberty Plaza
New York, New York 10006
(212) 412-9500
Attorneys for WTCP Cross-Claim Plaintiffs
    World Trade Center Properties LLC,
    1 World Trade Center LLC,
    2 World Trade Center LLC,
    4 World Trade Center LLC,
    5 World Trade Center LLC, and
    7 World Trade Company, L.P.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

|  |  |
|---|---|
| IN RE SEPTEMBER 11 LITIGATION | 21 MC 97 (AKH) |
|  | 21 MC 101 (AKH) |
| IN RE SEPTEMBER 11 PROPERTY DAMAGE AND BUSINESS LOSS LITIGATION | **DECLARATION OF WOLFGANG A. DASE, ESQ. IN SUPPORT OF THE CROSS-MOTION BY WTCP CROSS-CLAIM PLAINTIFFS TO SEVER AND STAY CLAIMS FOR PUNITIVE DAMAGES OR, IN THE ALTERNATIVE, BIFURCATE ALL ACTIONS IN WHICH PLAINTIFFS SEEK PUNITIVE DAMAGES, ORDER A SEPARATE TRIAL FOR THE PUNITIVE DAMAGES CLAIMS, AND DEFER ENFORCEMENT OF ANY JUDGMENTS FOR PUNITIVE DAMAGES CLAIMS** |

-------------------------------------------------------------------X

    WOLFGANG A. DASE, an attorney admitted to practice in the State of New York and

before this Court, declares under the penalties of perjury under the laws of the United States

that the following is true and correct:

    1.    I am Of Counsel to the law firm of Flemming Zulack Williamson Zauderer

LLP, attorneys for cross-claim plaintiffs World Trade Center Properties LLC, 1 World Trade

Center LLC, 2 World Trade Center LLC, 4 World Trade Center LLC, 5 World Trade Center

LLC, and 7 World Trade Company, L.P. (collectively, "WTCP Cross-Claim Plaintiffs"). I submit this Declaration in support of the cross-motion by the WTCP Cross-Claim Plaintiffs to sever and stay claims for punitive damages or, in the alternative, bifurcate all actions in which plaintiffs seek punitive damages, order a separate trial for the punitive damages claims, and defer enforcement of any judgments for punitive damages.

2.      As set forth below, the total amount of all claims set forth in the Damage Disclosure Forms submitted in the 21 MC 97 and 21 MC 101 actions of which our firm has received copies exceeds the total amount of the liability insurance, discovered to date, that is available to the Aviation Defendants[1] to respond to all such claims.

3.      I supervised the review of approximately 926 Damage Disclosure Forms produced, to date, to the WTCP Cross-Claim Plaintiffs, which Forms bear the following headings: "Property Damage Disclosure – Subrogation"; "Property Plaintiff Damage Disclosure – Property Damage (Uninsured Loss) Plaintiff"; "Cross-Claim Plaintiff's Damage Disclosure"; "WTCP Cross-Claim Plaintiffs' Updated Damages Disclosure: 1, 2, 4 and 5 World Trade Center"; and "WTCP Cross-Claim Plaintiffs' Updated Damages Disclosure: 7 World Trade Center" (collectively, the "DDFs")[2]. The DDFs reveal the following information:

_____

[1] "Aviation Defendants" includes all defendant airlines, airport operators, security companies and The Boeing Company.

[2] It is my understanding that some of the property damage claimants have also submitted revised DDFs. With the exception of the WTCP Cross-Claim Plaintiffs' revised DDFs, our firm has not, to date, received copies of such revised DDFs.

- Approximately 914 DDFs are submitted by insurance companies and state that the total amount of all claims paid by such insurers to their insureds is approximately $4.61 billion. These are the claims for which the insurers are seeking refunds by way of subrogation (plus any amounts still to be paid hereafter by the insurers).

- Twelve (12) DDFs are submitted by entities and persons other than insurance companies and state that the total amount of damages claimed, including property damage, business losses and future anticipated losses, for such claimants is $18.27 billion. Plaintiffs that submitted the foregoing 12 DDFs also indicated on their DDFs that they received approximately $4.44 billion in payments from insurance companies. Thus, the plaintiffs that submitted the foregoing 12 DDFs claim approximately $13.83 billion in uninsured losses.

- The amount claimed on the approximately 926 DDFs mentioned above totals approximately $18.44 billion (excluding pre-judgment interest). This total relates to subrogation claims, and claims for property damage, business losses and future anticipated losses, and does not include any of the Wrongful Death/Personal Injury compensatory damages claims asserted in the 21 MC 97 actions.

4. I also reviewed various insurance-related documents and information provided, to date, to the WTCP Cross-Claim Plaintiffs by the following Aviation Defendants: AMR Corp./American Airlines, Inc., Argenbright Security, Inc., The Boeing Company, Colgan Air, Inc., Delta Air Lines, Inc., Globe Aviation Services Corp., Huntleigh U.S.A. Corp.,

3

ICTS International NV, Massachusetts Port Authority, United Air Lines, Inc./UAL Corp. and US Airways, Inc. To date, Continental Airlines has not responded at all to plaintiffs' January 17, 2007 insurance discovery requests (the "insurance discovery")[3] and, to my knowledge, has not provided any of its insurance coverage information or insurance documents. Based upon the foregoing insurance information, I have calculated that the total of all of the Aviation Defendants' liability insurance coverage (discovered to date) amounts to approximately $13 billion. This amount is an estimate, based upon incomplete information contained in various insurance policies, redacted insurance policies, insurance policy excerpts, a certificate of insurance, representations contained in letters from the Aviation Defendants' counsel and the Aviation Defendants' "responses" to the insurance discovery.

5.       The foregoing insurance amount of approximately $13 billion does not reflect reductions in the Aviation Defendants' liability insurance coverage limits due to the Aviation Defendants' past settlements of various wrongful death actions in the 21 MC 97 docket. It also does not reflect any reductions in coverage limits due to payments made by the Aviation Defendants' insurers for claims not related to the terrorist-related aircraft crashes of September 11, 2001 or, where applicable, erosion of the policy limits because of defense costs, expenses or disbursements paid by insurers.

6.       The documents I reviewed in connection with the preparation of this Declaration are voluminous and, therefore, are not attached to this Declaration except for the Orders

---

[3] "Insurance discovery" refers to the Supplemental Interrogatories And Requests For Production Of Documents Regarding Insurance, dated January 17, 2007, served on behalf of the WTCP Cross-Claim Plaintiffs, The Port Authority of New York and New Jersey, the Personal Injury/Wrongful Death plaintiffs, and the Property Damage/Business Loss plaintiffs.

referred to in ¶7. If the Court so desires, I would be happy to provide the Court with copies of all such documents.

      7.     For the convenience of the Court, the following two documents referred to in the accompanying Memorandum of Law are attached hereto:

          a.  A true and correct copy of the Order entered December 19, 2002 in *In re New York City Asbestos Litig.,* No. 40000/88 (Attachment A).

          b.  A true and correct copy of the Order entered February 13, 2003 in *In re New York City Asbestos Litig.,* No. 40000/88 (Attachment B).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 25, 2007.

 

                                              _____
                                              Wolfgang A. Dase, Esq.

**ATTACHMENT A**

SUPREME COURT OF THE STATE OF NEW YORK
ALL COUNTIES WITHIN THE CITY OF NEW YORK

|                                    |   |                     |
|------------------------------------|---|---------------------|
| IN RE:  NEW YORK CITY              | : | New York City       |
|         ASBESTOS LITIGATION        | : | Asbestos Litigation |
|                                    | : | (NYCAL)             |
|                                    | : |                     |
| This Document Relates To:          | : | ORDER               |
|                                    | : |                     |
|      All Cases                     | : | Index No. 40000/88  |
|                                    | : |                     |

More than 21,000 asbestos-related personal injury actions for personal injury or wrongful

death are now pending in New York County. Of that number, fewer than 2000, or 10%, of the

claimants or decedents suffer or suffered from asbestos-related malignant diseases, and a small

percentage of the remainder have sustained functionally impairing asbestosis. For the great

majority of plaintiffs and decedents, however, the only clinical markers of asbestos exposure are

pleural thickening or plaques that caused no discernible physical impairment.[1]

The large number of claims made by or on behalf of the unimpaired or minimally

impaired impedes the ability of the much smaller group of seriously ill plaintiffs and decedents to

recover for their injuries. Recoveries by unimpaired or minimally impaired plaintiffs deplete the

funds needed to compensate present and future claimants with serious illnesses, and resources are

---

[1] The United States Supreme Court has stated that "up to one-half of asbestos claims
[nationwide] are now being filed by people who have little or no physical impairment." *Amchem
Prods., Inc. v. Windsor*, 521 U.S. 591, 631 (1997) ( Breyer, J., concurring in part and dissenting
in part) (quoting Christopher F. Edley, Jr. & Paul C. Weiler, Asbestos: A Multi-Billion Dollar
Crisis, 30 Harv. J. On Legis. 383, 393 (1993). A recent study estimates that more than ninety
percent of current claimants nationwide allege non-malignant injuries. Jennifer L. Biggs et al.,
Overview of Asbestos Issues & Trends 3 (December 2001), available at
http://www.actuary.org/mono.htm.

dwindling as the "elephantine mass of asbestos cases"[2] nationwide drives large numbers of

potentially culpable parties into bankruptcy.[3]

To protect the interests of the significantly impaired, the "first in, first out" system of

docket management ("FIFO") heretofore used in the New York City Asbestos Litigation

("NYCAL"), as set forth in the Amended Case Management Order (the "CMO") dated

September 20, 1996, amended as of July 23, 2001, and as further amended to date, shall be

modified to establish (1) a "Deferred Docket" of claimants with minimal or no impairment, (2)

---

[2] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 821 (1999). By the end of 2000, more than 600,000 people in the United States had filed claims for asbestos-related personal injuries. Stephen J. Carroll et al., *Asbestos Litig. Costs & Compen.* 40-41 (RAND Inst. for J. 2002).

[3] Since 1982, at least sixty-two companies that mined asbestos, or manufactured or used asbestos-containing products, have filed for bankruptcy. UNR Industries, Inc. (filed in 1982), Johns-Manville Co. (1982), Amatex Corp. (1982), Waterman Steamship Corp. (1983), Wallace & Gale Co. (1984), Forty-Eight Insulations, Inc. (1985), PACOR (1986), Prudential Lines, Inc. (1986), Standard Insulations, Inc. (1986), U.S. Lines (1986), Nicolet, Inc. (1987), Gatke Corp. (1987), Todd Shipyards (1987), Chemetron Corp. (1988) Raytech (1989), Delaware Insulations (1989), Celotex Corp. (1990), Hillsborough Holdings (1990), National Gypsum Co. (1990), Standard Asbestos Mfg. & Insul. (1990), Eagle-Picher (1991), H.K. Porter Co. (1991), Cassiar Mines (1992), Kentile Floors (1992), Keene Corp. (1993), American Shipbuilding, Inc. (1993), Lykes Brothers Steamship (1995), Rock Wool Mfg. (1996), SGL Carbon (1998), M.H. Detrick (1998), Brunswick Fabricators (1998), Fuller-Austin Insul. (1998), Harnischfeger Corp. (1999), Joy Technologies (1999), Rutland Fire & Clay (1999), Babcock & Wilcox (2000), Pittsburgh Corning (2000), Burns & Roe Enterprises (2000), E.J. Bartells (2000), Owens Corning (2000), Armstrong World Industries (2000), G-1 Holdings (GAF Corp.) (2001), W.R. Grace (2001), Skinner Engine Co. (2001), USG (US Gypsum) Corp. (2001), Federal Mogul (2001), Eastco Industrial Safety Corp. (2001), Washington Group Int'l, Inc. (2001), Bethlehem Steel (2001), North American Refractories (NARCO) (2002), Kaiser Aluminum (2002), Plibrico Refractories (2002), Porter-Hayden (2002), American Club (2002), Huxley Development Corp. (2002), Harbison-Walker Refractories Co. (2002), Continental Producers Corp. (2002), A.P. Green Indus. (2002), Shook & Fletcher (2002), Atra Group, Inc. (Synkoloid) (2002), and ACandS, Inc. (2002).

All these corporations filed bankruptcy petitions indicating that asbestos litigation was the primary cause of their insolvency. Carroll et al., *Asbestos Litig. Costs & Compen.* at 71.

an "Active Docket" for clustering and trying cases of significantly impaired claimants who are ineligible for the Accelerated Trial Clusters under the CMO, and (3) a procedure for transferring cases from the Deferred Docket to the Active Docket.

## I. *Amendment of CMO*

To the extent that this order conflicts with any provisions of the CMO, this order supersedes those provisions, *except* that this order shall not apply to or affect any case which has already been assigned to a monthly trial group pursuant to CMO § XIV, or to an Accelerated Trial Cluster pursuant to CMO § XV.

The Special Master is directed to submit an amended and re-stated CMO that incorporates the provisions of this order.

## II. *Definitions*

For purposes of this order,

1.  A "board-certified pulmonary specialist" or "board-certified internist" means a physician currently actively licensed to practice medicine in one or more of the States of the United States who is currently actively certified by the American Board of Internal Medicine in the Subspeciality of Pulmonary Medicine (pulmonary specialist) or the American Board of Internal Medicine (internist).

2.  A "currently certified B-reader" shall refer to an individual who has successfully completed the NIOSH-sponsored X-ray interpretation course and whose NIOSH-certification is up-to-date.

3.    "ILO grade" shall refer to the radiological ratings of the International Labor Office set forth in "Guidelines for the Use of ILO International Classification of Radiographs of Pneumoconioses" (1980).

4.    "Chest X-rays" means chest films taken in four views (PA, Lateral, Left and Right Oblique) that are graded quality 1 for reading according to the ILO criteria.

5.    "Pulmonary Function Testing" shall refer to spirometry, lung volume testing and diffusing capacity testing which conform to quality criteria established by the American Thoracic Society (ATS) and is performed on equipment which meets ATS standards for technical quality and calibration, all as set forth in 20 C.F.R. 718.103 and Appendix B thereto or in the ATS guidelines in 144 *American Review of Respiratory Disease* 1202-18 (1991). Each subject must be tested with and without inhaled bronchodilators, with best values taken. Predicted values for spirometry and lung volumes shall be those published by Morris, *Clinical Pulmonary Function Testing*, 2d ed., Intermountain Thoracic Society (1984).

6.    The "minimum criteria for activation" shall be defined as follows:

### Non-Malignant Changes Shown By Testing

A.    Chest X-rays which, in the opinion of a currently certified B-reader, show small irregular opacities of ILO grade 1/0; *and*

pulmonary function testing that, in the opinion of a board-certified pulmonary specialist or internist, shows either:

4

    (i)     FVC $\leq$ 80% of predicted value with FEV-1/FVC $\geq$ 68% (actual value), *or*

    (ii)    TLC $\leq$ 80% of predicted value;

*or*

B.    Chest X-rays which, in the opinion of a currently certified B-reader, show small irregular opacities of ILO grade 1/1 or greater; *and*

Pulmonary function testing that, in the opinion of a board-certified pulmonary specialist or internist, shows either:

    (i)     FVC $\leq$ 80% of predicted value with FEV-1/FVC $\geq$ 65% (actual value), *or*

    (ii)    TLC $\leq$ 80% of predicted value;

*or*

(C)    Chest X-rays which, in the opinion of a currently certified B-reader, to a reasonable degree of medical certainty, demonstrate bilateral asbestos-related pleural thickening which has an ILO grade B2 or greater *and* with pulmonary function testing that, in the opinion of a board certified pulmonary specialist or internist, to a reasonable degree of medical certainty shows either

    (i)     FVC $\leq$ 80% of predicted value with FEV-1/FVC $\geq$ 68% (actual value), *or*

    (ii)    TLC $\leq$ 80% of predicted value,

5

*and* with a statement by a board-certified pulmonary specialist or internist that, based upon a complete review of the claimant's entire medical record, to a reasonable degree of medical certainty, the asbestos-related changes are a substantial contributing factor to the pulmonary function changes;

*or*

### Non-Malignant Changes Shown by Pathology

(D)    In the case of a claim brought on behalf of a decedent, if representative lung tissue of the decedent is available, a report by a board-certified pathologist, stating that, to a reasonable degree of medical probability, more than one representative section of lung tissue that is unaffected by any other process (*e.g.*, cancer or emphysema) demonstrates a pattern of peribronchiolar or parenchymal scarring in the presence of characteristic asbestos bodies, and that there is no other more likely explanation for the presence of the fibrosis;

*or*

### Diagnosis of Cancer

(E)    A diagnosis of cancer, which is demonstrated by a medical report of a board-certified internist, pulmonary specialist, oncologist or pathologist showing the diagnosis as a primary cancer, which states to a reasonable degree of medical certainty that the cancer in question is caused by asbestos exposure.

6

### III. *Deferred Docket*

(1)  The Deferred Docket consists of all actions brought by or on behalf of claimants who do not meet the minimum criteria for activation. All proceedings with respect to cases on the Deferred Docket are stayed, except for stipulations (as described below) to transfer cases to the Active Docket, as hereinafter defined, and motions for leave to amend the complaint (as described below), until further order of the Court.

(2)  Any case that, as of the date of this order, has been commenced but not assigned to either a monthly trial group (pursuant to CMO § XIV) or an Accelerated Trial Cluster (pursuant to CMO § XV) is deemed to be on the Deferred Docket, *unless*

    (A)  on or before April 1, 2003, (i) plaintiffs and (ii) Special Liaison Counsel for the defendants (as described below) stipulate that the party allegedly injured from asbestos exposure satisfies the minimum criteria for activation;

*or*

    (B)  on or before April 15, 2003,

        (i)  the plaintiff(s) (a) move for leave to amend the complaint so as to allege with specificity that the party injured from asbestos exposure satisfies the minimum criteria for activation and (b) annex the requisite documentation to the proposed amended complaint, *and*

7

(ii)    the Court grants leave to amend the complaint.  Leave to amend shall be denied if the minimum criteria for activation have not been satisfied.

(3)    Any case that is commenced after the date of this order is deemed to be on the Deferred Docket, *unless* the complaint, as initially filed and served, alleges with specificity that the party claiming injury from asbestos exposure meets the minimum criteria for activation and annexes the requisite documentation as evidence thereof.  No plaintiff may file a Request for Judicial Intervention for any Deferred Docket case commenced after the date of this order.

(4)    Any case that

(A)    is commenced after the date of this order and initially deemed to be on the Deferred Docket

*or*

(B)    was commenced before the date of this order but not transferred to the Active Docket by timely stipulation or motion, under the procedures set forth above in section III(2),

shall be removed from it and placed on the "Active Docket," as described below,

*if*

(C)    plaintiffs and Special Liaison Counsel for the defendants (as hereinafter defined) stipulate that the party allegedly injured from asbestos exposure now satisfies the minimum criteria for activation,

*or*

8

(D)    (i)    The plaintiff or plaintiff(s) (a) move for leave to amend the complaint so as to allege with specificity that the party injured from asbestos exposure meets the minimum criteria for activation and (b) annex the requisite documentation to the proposed amended complaint, *and*

     (ii)    the Court grants leave to amend the complaint. Leave to amend shall be denied and the case shall remain on the Deferred Docket if the minimum criteria for activation have not been satisfied.

## IV. *Active Docket*

(1)    All cases which (A) as of the date hereof, have been assigned to a monthly trial group pursuant to CMO § XIV *or* (B) have been or will be assigned to an Accelerated Trial Cluster pursuant to CMO § XV, shall be prosecuted and tried in the manner now set forth in the CMO.

(2)    All other cases which are not on the Deferred Docket are deemed to be on the Active Docket. A case on the Active Docket shall be clustered and scheduled for trial strictly in FIFO order, except for the first Active Docket cluster described below. For a case on the Active Docket, FIFO order is determined by the date that the action was commenced, *except that*, for any case that

(A)    is commenced after the date of this order which initially is on the Deferred Docket, and which is later placed on the Active Docket by stipulation or order of the Court granting leave to amend the complaint

9

*or*

(B)     was commenced before the date of this order but not transferred to the

Active Docket by timely stipulation or motion, pursuant to Section III(2),

the FIFO order shall be determined by the date of said stipulation or order. The

fifteen-month discovery schedule set forth in CMO § XIV shall apply to all Active

Docket clusters.

(3)     The first Active Docket cluster shall comprise the first 75 cancer cases (not

asbestosis) on the Active Docket, selected in strict FIFO order, and shall begin

trial on February 2, 2004.

(4)     Thereafter, two annual clusters of 150 Active Docket cases shall be clustered to

begin trial on the first Monday of each February and August, beginning with

August 2, 2004.

## V. *Docket Lists*

On or before May 1, 2003, counsel for plaintiffs shall submit to the Special Master and to

Special Liaison Counsel, as described below, complete lists of (1) the inventory of cases on the

Deferred Docket and (2) the inventory of cases on the Active Docket, specifying for each the

disease alleged and FIFO date. The lists shall be updated periodically at the direction of the

Special Master.

10

### VI. *Special Liaison Counsel*

After consultation with the parties, the Special Master shall designate Special Liaison Counsel with the authority to (1) stipulate that the minimum criteria for activation has been met in a case and (2) review the docket lists submitted by plaintiffs for accuracy.

### VII. *Special Master*

(1)    All disputes concerning the composition of the docket lists, as well as the FIFO ordering of the Active Docket, are referred to the Special Master for rulings.

(2)    Any party objecting to a ruling by the Special Master with respect to the composition and ordering of the Active Docket and Deferred Docket may raise its objection with the Court utilizing the procedures set forth in CMO § III(B).

**SO ORDERED.**

Dated:  December 19, 2002

Helen E. Freedman, J.S.C.

11

**ATTACHMENT B**

## NEW YORK CITY ASBESTOS LITIGATION
## AMENDED CASE MANAGEMENT ORDER DATED SEPTEMBER 20, 1996, AMENDED AS OF FEBRUARY 19, 2003

### INDEX

Page

I. Applicability of this Order........................................................................ 1
II. Objectives................................................................................................. 1
III. Special Discovery Master/Referee............................................................ 2
IV. Filing Procedures ..................................................................................... 4
    *A. Files* ....................................................................................................... 4
    *B. Captions of Cases*................................................................................. 5
    *C. Filing of Papers* .................................................................................. 5
V. Rules of Procedure ................................................................................... 6
VI. Pleadings.................................................................................................. 6
VII. Liaison Counsel....................................................................................... 9
VIII. Standard Consolidated Discovery........................................................... 11
    *A. Interrogatories* ................................................................................. 11
    *B. Document Requests*........................................................................... 14
    *C. General Discovery Provisions* .......................................................... 16
    *D. Previously Produced Documents*....................................................... 17
IX. Medical Examinations of Plaintiffs.......................................................... 18
X. Depositions............................................................................................... 18
    *A. General Guidelines.* ........................................................................... 18
    *B. Depositions of Plaintiffs*.................................................................... 20
    *C. Depositions of Defendants*................................................................. 20
    *D. Multi-Jurisdictional Depositions*....................................................... 21
XI. Videotape Depositions.............................................................................. 21
    *A. Videotape Depositions of Seriously Ill Plaintiffs* .............................. 21
    *B. Procedures as to Videotape Deposition* ............................................ 22
XII. Use of Discovery and Depositions from Other Cases............................... 26
XIII. Docket Lists and Trial Clusters .............................................................. 27
XIV. Accelerated Trial Clusters...................................................................... 29
XV. FIFO Cases............................................................................................. 31
    *A. FIFO Trial Clusters.* .......................................................................... 31
    *B. Active Docket* ................................................................................... 34
    *C. Deferred Docket*................................................................................ 37
    *D. Defense Discovery and Medical Liaison Counsel* .............................. 37
    *E. Discovery Schedules (Time Lines) and Sanctions.* ............................. 38
    *F. Settlement Conferences*...................................................................... 43
XVI. Summary Judgment Motions .................................................................. 44
XVII. Punitive Damages.................................................................................. 46
XVIII. Miscellaneous ..................................................................................... 46
XIX. Death of Plaintiff.................................................................................... 46
    *A. Accelerated Trial Clusters and Monthly Trial Groups* ...................... 46
    *B. All Other FIFO Cases* ....................................................................... 47
    *C. All Cases* ........................................................................................... 47

EXHIBITS

Ex. A.    Plaintiff's Initial Fact Sheet

Ex. B.    [Intentionally deleted]

Ex. C.    Defendants' Fourth Amended Standard Set of Interrogatories and Request
          for Production of Documents

Ex. D.    Plaintiffs' First Standard Set of Liability Interrogatories and Request for
          Production of Documents

Ex. E.    Plaintiffs' Product Identification Interrogatories and Document Requests to all
          Defendants

Ex. F.    Model Discovery Schedule – FIFO Trial Clusters

Ex. G.    Model Discovery Schedule – Accelerated Trial Clusters

CMO Amendment Re: NOSJM and Exhibit H

Defendants' 4th Amended Standard Set of Interrogatories and Request for Production of
Documents

Deferred Docket Order So Ordered December 19, 2002



SUPREME COURT OF THE STATE OF NEW YORK
ALL COUNTIES WITHIN THE CITY OF NEW YORK
------------------------------------------------------------------x
                                  :

IN RE: NEW YORK CITY                :
ASBESTOS LITIGATION            :
                                  :

------------------------------------------------------------------x

**This Document Relates To:**     :

    All Cases                 :

                                  :

------------------------------------------------------------------x

New York City
Asbestos Litigation
(NYCAL)

Index No. 40000/88

AMENDED CASE
MANAGEMENT ORDER

September 20, 1996,
Amended as of February 19, 2003

## I.   **Applicability of This Order**

     This Order applies to all pretrial procedures involving all asbestos personal injury and wrongful death cases now or hereafter assigned to the undersigned, except as otherwise directed by the Court upon motion and for cause shown by the party seeking to have this Order declared inapplicable, and supersedes all previous case management orders and amendments thereto entered in the asbestos litigation previously pending in all counties in the City of New York, Supreme Court.

## II.   **Objectives**

     It is the objective of the Court to encourage and bring about the fair, expeditious, and inexpensive resolution of these cases. In an effort to achieve this goal, a case management plan ("CMP"), drafted by a steering committee including the Special Master, plaintiffs' and defendants' counsel, and supplemented by Order of this Court, is established to allow the parties to obtain reasonably necessary documents and information without imposing undue burdens in order to permit the parties to evaluate the cases, reach early settlements, and prepare unsettled cases for trial. The essential components of the CMP include, to the extent feasible:

    **A.**    Standardization of pleadings and discovery so that the parties can obtain the necessary information to evaluate cases for settlement or to prepare them for trial at minimum cost;

    **B.**    Conducting early pretrial conferences to explore settlement opportunities, to resolve pretrial management problems, and to establish discovery cut-off dates;

    **C.**    Grouping, ordering, and firm scheduling of cases for pretrial procedures and trial; and

    **D.**    Coordination of discovery, the use and compensation of Liaison Counsel, the appointment and compensation of a Special Discovery Master/Referee, and other orders as necessary to avoid duplication, contain costs, and expedite disposition through settlement or trial.

### III.   Special Discovery Master/Referee

    **A.**    The Court appoints Laraine Pacheco, Esq. as Special Discovery Master/Referee ("Special Master") in these cases. The Special Master shall supervise compliance with discovery and, when necessary, make recommended rulings for the Court's consideration on all discovery disputes, shall convene and conduct mandatory settlement conferences as necessary and in accordance with the timeline contained in the CMO, and shall have such other duties as specified by the CMO. Upon agreement of both parties, an independent settlement master may be retained and separately compensated to assist in the possible settlement and/or resolution of a particular case or group of cases.

    **B.**    Any party objecting to a ruling by the Special Master on discovery issues must notify the Special Master and all other interested parties of its intention to raise an objection

2

(by fax) within three (3) business days of receiving the Special Master's written recommendation. Thereafter, said objection must be raised with the Court within seven (7) days of the receipt (by fax) of the Special Master's written recommendation. If notification of a party's intention to challenge the Special Master's written recommendation is not given within three (3) business days, the Court may adopt the recommended ruling as its order on the disputed issue. Any and all motions made by the parties pursuant to this Amended Case Management Order must reference the paragraph(s) of this Order under which relief is sought, if applicable.

        **C.**    The parties have agreed to compensate Laraine Pacheco, Esq. for her services as Special Master at the flat rate of $368,000 per year. These fees shall be borne, jointly, 40% by plaintiffs and, jointly, 60% by defendants. Allocations among plaintiffs (for their 40% share) and defendants (for their 60% share) shall be submitted to the Special Master, under seal, on or before February 1 of each year. Thereafter, all parties to whom a share has been allocated shall make payment in full of their allocated share to the offices of the Special Master on or before April 15 of that year.

        **D.**    The reappointment of the Special Master, the amount of the Special Master's compensation and the allocation of her fees as among plaintiffs and defendants will be annually reviewed and the subject of a separate yearly order of the Court.

        **E.**    This appointment of Laraine Pacheco, Esq. will extend from February 1, through January 31 of the following year for each year this Order is in force and effect.

## IV.    Filing Procedures

### A.    Files

A master file, known as New York City Asbestos Litigation ("NYCAL") Master File, has been established in the Office of the Clerk of New York County for all asbestos cases assigned to the undersigned for coordinated pretrial proceedings, whether such cases were commenced in New York, Kings, Queens, Bronx or Richmond County.  Entries on the NYCAL Master File shall be applicable to each asbestos case assigned to the undersigned for coordinated pretrial proceedings.

The original of this Order shall be filed by the County Clerk in the NYCAL Master File previously established, and a copy shall be deemed to be part of the record of each coordinated action.

A separate file shall also be maintained under a separate Index Number for each individual action and each individual plaintiff in the Office of the Clerk of New York County, and entries shall be made therein in accordance with this Order.

**B.**     <u>Captions of Cases</u>

Every document filed in these coordinated actions that has general application to

all cases shall bear a caption as follows:

SUPREME COURT OF THE STATE OF NEW YORK
ALL COUNTIES WITHIN THE CITY OF NEW YORK
-----------------------------------------------------x
                                     :
IN RE: NEW YORK CITY          :     NYCAL
ASBESTOS LITIGATION         :     (Title of Document)
                                     :     Index No. 40000
-----------------------------------------------------x

**C.**     <u>Filing of Papers</u>

**1.**     When a paper has general application to all cases, the caption shall bear

index number 40000 and the Clerk of New York County shall file such a paper in the Master

File. No further copies of the papers need to be filed. Any document so filed shall be deemed to

have been filed in each case to which this Order applies and shall constitute part of the record of

each such case.

**2.**     When a paper, like a Plaintiffs Initial Fact Sheet ("PIFS") or a motion, is

applicable only to an individual case, the attorney submitting such paper for filing shall supply a

cover sheet containing the caption, name and index number to which the paper is applicable.

The Clerk of New York County shall not file such a paper in the NYCAL Master File; rather,

after receipt by the Clerk, the Clerk shall file the original in the individual case file under the

appropriate index number.

3.      When a paper is filed that is applicable to two or more but less than all of these coordinated actions, the captions shall state the case names and separate index numbers of the actions to which that paper is applicable.  The Clerk of New York County shall file a copy in the separate file bearing the index number so identified to which the paper is intended to be applicable.

4.      It shall be the responsibility of the attorney submitting such paper for filing to supply a cover sheet containing the captions, names and index numbers of all cases to which the paper is applicable and supply the County Clerk with sufficient copies of any such paper to facilitate compliance with the directions of this paragraph.

## V.    **Rules of Procedure**

The Civil Practice Law and Rules and the Local Rules of the Supreme Court of the State of New York, New York County together with the express provisions of this Order shall govern all proceedings herein.

## VI.    **Pleadings**

A.      Plaintiffs Initial Fact Sheet ("PIFS"), annexed hereto as Exhibit "A," shall be included with the complaint or served upon the defendants within sixty (60) days after filing of the complaint.  The PIFS shall be filed by the Clerk of New York County in the file of the individual action pending in New York County to which the PIFS applies.   Multi-party complaints are not permitted.

**B.**    To the extent not previously done, plaintiffs' counsel shall file in the NYCAL Master File and serve on defendants a complaint or set of complaints containing standard allegations generally applicable to all claims of a similar nature. Thereafter, plaintiffs may and should, to the maximum extent feasible, serve and file a short form complaint which incorporates by reference all of the allegations contained in the appropriate standard complaint. In the case of previously filed complaints, leave is hereby granted to file such short form complaints as amended complaints filed by that firm.

**C.**    In any case commenced after the date of this order, the complaint must allege and include the requisite documentation of minimum criteria for activation, as set forth in Paragraph XV herein, in order to be placed on the Active Docket.

**D.**    Defendants shall file in the NYCAL Master File and serve on plaintiffs' Liaison Counsel a standard answer with affirmative defenses. When such standard set of defenses has been filed, a defendant may serve an acknowledgment of service on the plaintiff, by which service defendant will be deemed to have denied all material allegations contained in the plaintiff's complaint, except as stated in such acknowledgment, and to have raised each of the affirmative defenses contained in defendants' standard answer, except as stated in such acknowledgment. All co-defendants to which any cross-claims may apply will be deemed to have denied all material allegations contained in the cross-claims. Nothing herein shall preclude a defendant from filing an individual answer, if it so chooses.

**E.**    Any plaintiff may, without further leave of the Court, amend his or her complaint: to add claims based on survivorship, death of the original plaintiff, change of the

7

disease alleged, loss of consortium or society; to sever any joined claims; or to add additional defendants. Service of such amendments on counsel who have appeared in the action for a defendant shall be considered service on that defendant.  Such amendments may incorporate by reference the allegations of the complaint on file where appropriate.  Defendants who have previously answered shall be deemed to have answered the amended complaint as set forth in the preceding paragraph.  Other amendments to the pleadings shall be made in compliance with CPLR 3025.  However, the parties are encouraged to consent to such amendments where appropriate in light of New York State's recognition that leave to amend is to be freely granted.

      F.    If a plaintiff in an Accelerated Trial Cluster (see Paragraph XIV) amends his or her complaint to add an additional defendant(s) during the sixty-day period before May 1 for the May Cluster and November 1 for the November Cluster, at the request of the late-added defendant, that plaintiff's action shall be automatically removed from the cluster and shall be put into the next succeeding Accelerated Trial Cluster, except for extraordinary cause shown by plaintiff. Automatic removal shall not preclude application by defendants for any other relief to which they may be entitled for other reasons.

      G.    If a plaintiff in an Accelerated Trial Cluster amends his or her complaint to add an additional defendant(s) on or after May 1 for the May Cluster and November 1 for the November Cluster, at the request of the late-added defendant, that plaintiff's action shall be automatically removed from the cluster and added to the chronological list of cases from which cases are assigned to the active docket, except for extraordinary cause shown by plaintiff. However, if the plaintiff is still living at the time the window for the next Accelerated Trial

Cluster opens, plaintiff may reapply for inclusion in that cluster if the plaintiff is alive at the time of application.

## VII.    Liaison Counsel

A.    Appointment of Liaison Counsel to act on behalf of plaintiffs' counsel and on behalf of defendants' counsel after appropriate consultation where necessary will facilitate communications among the Court and counsel, minimize duplication of effort, coordinate joint positions, and provide for the efficient progress and control of this litigation.

B.    Subject to the right of any party to present individual or divergent positions or to take individual actions, Liaison Counsel are vested by the Court with the following responsibilities and duties:

1.    to coordinate the briefing of motions;

2.    to coordinate the argument of motions;

3.    to coordinate the conduct of discovery procedures, including but not limited to coordination of the preparation of joint written interrogatories, joint requests to admit, and joint requests for the production of documents, where applicable;

4.    to coordinate the examination of witnesses in depositions;

5.    to coordinate the selection of counsel to act as spokespersons at pretrial conferences; and

6.    to call meetings of counsel for plaintiffs and defendants respectively for the purpose of proposing joint actions, including but not limited to responses to

questions and suggestions of the Court or of adversaries with regard to orders, schedules, briefs, and stipulations of the facts.

C.    Co-Liaison Counsel for the plaintiffs shall be the firm of Wilentz Goldman & Spitzer and the firm of Weitz & Luxenberg.

D.    Co-Liaison Counsel for the defendants shall be the firm of Anderson Kill & Olick, P.C. and the firm of Malaby, Carlisle & Bradley, LLC.

E.    Liaison Counsel are authorized to receive orders, notices, correspondence, and telephone calls from the Court, the Special Master and the Clerk of the Court on behalf of all defendants and plaintiffs and shall be responsible for notifying all counsel of all communications received from the Court.

F.    Notwithstanding the appointment of Liaison Counsel, each counsel shall have the right to participate in all proceedings before the Court as fully as such counsel deems necessary.

G.    Liaison Counsel shall not have the right to bind any party except Liaison Counsel's own respective clients as to any matter without the consent of counsel for any other party.

H.    Plaintiffs' Liaison Counsel and defendants' Liaison Counsel shall be reimbursed periodically but not less than every six months by counsel for plaintiffs and counsel for defendants respectively for their necessary and reasonable expenses actually incurred in performing their tasks pursuant to this Order and shall keep records of such expenses in reasonable detail for examination by counsel. Liaison Counsel shall be paid by each plaintiff's

and defendant's counsel on an equitable basis to be agreed upon by the parties or fixed by the Court with each plaintiff and defendant having to pay a proportionate share of the costs incurred by its respective Liaison Counsel in representing its interests.

   I.  Liaison Counsels' invoices for services as Liaison Counsel pursuant to this Order shall be due and payable when submitted. Interest shall be computed at the rate applicable to judgments starting thirty (30) days after the date of their submission.

## VIII. **Standard Consolidated Discovery**

**A.**  **Interrogatories**

   Standard Interrogatories (CPLR 3130) and Requests for Production of Documents (CPLR 3120) shall be utilized as set forth herein. The Court on its own motion hereby permits the use of interrogatories in addition to depositions pursuant to CPLR 3130.

   **1.**  **Defendants' Interrogatories**

    **a.**  Defendants have developed a single, standard joint set of interrogatories to plaintiffs which has been filed with the County Clerk under the index number 40000 and provided to plaintiffs' Liaison Counsel. These standard interrogatories are captioned Defendants' Third Amended Standard Set of Interrogatories and Requests for Production of Documents and a copy is annexed hereto as Exhibit "C."

    **b.**  Plaintiffs shall serve upon all defendants in the action responses to defendants' standard set of interrogatories in accordance with the time line set forth herein. The

11

interrogatories shall be answered in full and verified by each individual plaintiff according to the CPLR.

      **c.**     After the standard set of interrogatories is answered, any defendant may serve supplemental, non-repetitive interrogatories upon application with notice to and approval from the Special Master. Defense counsel are admonished to exercise the utmost good faith in determining the necessity for such further interrogatories.

      **d.**     Defendants' Third Amended Standard Set of Interrogatories and Requests for Production of Documents shall be deemed to apply to all cases, without the necessity of further filing and service of such interrogatories in individual cases. Any standard interrogatories served and answered in cases pending in any federal court or in any judicial district in the State of New York, are deemed to apply to all cases pending before this Court without the necessity of further service in the state actions. In the case of a new plaintiff not represented by any attorney who has previously appeared for some other plaintiff in this litigation, defendants' Liaison Counsel will serve a copy of the interrogatories on such counsel.

      **e.**     Copies of any records obtained by any defendant pursuant to authorization of a plaintiff, other than those records which are obtained through a mutually agreed upon records retrieval service, shall be made available to plaintiff's counsel by notice of receipt mailed to plaintiff's counsel within ten (10) days of receipt.

    **2.**    **Plaintiffs' Interrogatories**

      **a.**     Plaintiffs have developed a single, standard joint set of interrogatories designed to obtain general liability information. A copy is annexed hereto as Exhibit "D."

Plaintiffs are permitted to reword the standard interrogatories, as appropriate, to conform to the class of defendant to whom they are directed (e.g., premises owner, contractor).

      **b.**    To the extent not previously done, each defendant shall file in the NYCAL Master File under index number 40000 a single set of responses which shall be applicable to all coordinated actions. Responses by defendants to this set of interrogatories shall be served on plaintiffs' Liaison Counsel and when so served shall be deemed served in each case. In the event that a defendant not previously named in these actions is named by the plaintiff, the plaintiff's counsel will so inform plaintiffs' Liaison Counsel, who will serve a set of standard interrogatories on such defendant. Response by such defendant shall be due within thirty (30) days of service. If plaintiffs' Liaison Counsel agrees, defendants may designate and serve interrogatories and their answers to such interrogatories which have been filed in other actions as their standard interrogatory answers pursuant to this section.

      **c.**    After the standard set of interrogatories is answered, plaintiffs may, upon application to and approval of the Special Master, in accordance with the time line, serve non-repetitive and/or previously not responded to interrogatories or requests for production of non-product identification documents to individual defendants. Plaintiffs' counsel are admonished to exercise the utmost good faith in determining the need for such further interrogatories. Any defendant may object thereto within thirty (30) days. Copies of any objections shall be filed with the Special Master. The Special Master will then issue a recommended ruling on the defendant's objections.

     **d.**     Plaintiffs may submit to individual defendants standard product identification interrogatories with respect to particular worksites. A copy of these standard product identification interrogatories is annexed hereto as Exhibit "E." Defendants' objections to any such interrogatories shall be brought before the Special Master within seven (7) days after receipt of the proposed product identification interrogatories. The Special Master shall issue recommended rulings on the objections in an omnibus manner, if possible. Thereafter, unless a further ruling is sought from the Court, those interrogatories shall be answered in full by defendants to whom they are directed according to the CPLR.

**B.**     **<u>Document Requests</u>**

     **1.**     **General Guidelines**

     **a.**     Subject to Paragraph B.2. below, the provisions of CPLR 3120 shall govern all requests for documents. The requesting party shall specify a reasonable time, place, and manner for making the inspection. The request will describe each item with reasonable particularity.

     **b.**     Counsel are directed to exercise the utmost good faith in making requests for production and in responding to requests. Counsel are directed to exercise their best efforts to resolve on an informal basis disputes arising out of the document requests and responses and objections thereto.

     **2.**     **Defendants' Requests for Documents**

     **a.**     Counsel for the defendants have developed a standard document request to the plaintiffs which is captioned Defendants' Third Amended Standard Set of Interrogatories and

Requests for Production of Documents, annexed hereto as Exhibit "C." This discovery request has been filed with the County Clerk under index number 40000 and is deemed to apply to all cases without the necessity of further filing and service of the request in individual cases, except that defendants' Liaison Counsel shall serve a set of standard document requests upon a plaintiffs' counsel who has not previously appeared on behalf of some other plaintiff in this litigation who requests such service.

      **b.**    Plaintiffs shall serve upon all defendants in the action the requested documents in accordance with the time line set forth herein. If any of the requested documents are not in plaintiffs' possession, custody, or control, the plaintiffs shall provide a mutually agreed upon records retrieval service with the necessary authorizations to obtain such records from other persons, the costs of which shall be borne by each party receiving a copy of such records.

      **c.**    After the standard set of document requests is responded to, defendants may, in accordance with the time line, serve supplemental, non-repetitive requests for documents in any case as they deem appropriate. Defendants' counsel are admonished to exercise the utmost good faith in determining the need for such further document requests.

    **3.**    **Plaintiffs' Requests for Documents**

      **a.**    Plaintiffs have developed a single, standard document request to the defendants. A copy is annexed hereto as Exhibit "D." Plaintiffs are permitted to reword the standard document requests, as appropriate, to conform to the class of defendant to whom they are directed (e.g., premises owner, contractor).

      **b.**    To the extent not previously done, each defendant shall produce or arrange

for production of documents pursuant to plaintiffs' standard document requests within thirty (30) days of service, subject to agreement between plaintiffs' Liaison Counsel and the particular defendant's counsel about the specific time and place and on a reasonable schedule for production. Each defendant shall produce documents by serving one set of the requested documents on plaintiffs' Liaison Counsel, who will permit other plaintiffs' counsel to inspect and copy such documents as they desire, or by arranging for production of such documents at a document depository.

        **c.**     After the standard set of document requests is responded to, plaintiffs may serve supplemental, non-repetitive document requests in any case they deem appropriate. Counsel are directed to exercise the utmost good faith in making requests for discovery and in responding to such requests.

**C.**    **General Discovery Provisions**

        **1.**     Disputes with regard to discovery shall be called immediately to the attention of the Special Master for resolution and shall not be relied upon by any party as a justification for not adhering to the time line unless otherwise directed by the Special Master.

        **2.**     Document production shall be in such form as will make clear the request to which the document is responsive.

        **3.**     Objections based on privilege shall clearly identify the privilege claimed and sufficient information concerning (i) the basis for the claim of privilege to *establish prima facie* the validity of the claim, and (ii) the privileged information to permit identification of the information or document as to which privilege is claimed. If not so identified, the privilege shall

be deemed waived.  The parties shall negotiate in an effort to preserve the confidentiality of trade secrets.

4.    Responses to requests calling for business or medical records shall state whether the record is or is not a record made in the course of a regularly conducted activity so as to be admissible under CPLR 4518.  If not so described, the document shall be deemed admissible under the rule.

5.    Any objection to discovery based on burdensomeness shall describe the burden with reasonable particularity.  Any objection to the time, place, or manner of production or as to burdensomeness shall state a reasonably available alternative as a counterproposal.

6.    Any response that a document cannot be located or information not determined shall state with reasonable particularity the efforts made to obtain the requested document or information.

7.    Any party wishing to propound any discovery on a party in a given case other than that provided herein may do so only upon application to the Special Master or by stipulation with opposing counsel.

**D.    Previously Produced Documents**

1.    Upon notice of the time and place of its previous production, any document produced by a party, its predecessor or successor in any other asbestos personal injury or death case shall be deemed produced in these cases, and any representations made by any defendant with respect to such document shall be deemed made in these cases.  This paragraph is not intended to address the ultimate issue of admissibility at trial of any previously produced

documents, and expressly leaves this issue for resolution by the trial court.

2.    Plaintiffs may submit to each defendant one or more lists of exhibits of previously produced documents they intend in good faith to use at trial.  Such list or lists shall be promptly reviewed by the respective defendants and, subject to any objection as to relevancy which objection is reserved to the time of trial, each defendant so served shall respond within forty-five (45) days and state whether it objects to the admissibility of any document listed and, if so, the specific grounds for such objection.

## IX.    Medical Examinations of Plaintiffs

Defendants shall have an opportunity, if they desire, to obtain a single medical examination of the plaintiff in accordance with CPLR 3121 and in accordance with the time line set forth herein.  A report of the medical examination together with copies of all tests shall be provided to plaintiff in accordance with the time line.

## X.    Depositions

### A.    General Guidelines

1.    All depositions shall be taken in accordance with CPLR 3107.  All depositions of parties shall be held in the New York City area unless otherwise ordered by the Court or agreed to by Liaison Counsel.

2.    All depositions must be scheduled through Liaison Counsel.

3.    All counsel shall avoid unnecessary and repetitive questioning of witnesses.  Unless all parties otherwise agree, all objections, except as to the form of the

question, shall be reserved until the time of trial. Any objection as to form shall be clearly stated, and upon request, the reasons given in order to enable the questioner to amend or change the question or correct any possible error as to form. All questions shall be answered except where a claim of privilege or burdensomeness is made, which claim, if not resolved, shall be forthwith brought before the Special Master for resolution.

4.    It is anticipated that each plaintiff's deposition will be completed within three and one-half (3½) hours, unless otherwise ordered by the Special Master or the Court or agreed upon by the parties. Reasonable requests for additional time will be liberally granted.

5.    All counsel may attend any deposition. Counsel may notice any deposition to apply to more than one case and shall use best efforts to ensure that appropriate depositions are noticed to apply to all appropriate cases or clusters.

6.    A notice of deposition of a witness who is not a party shall designate the areas of expected interrogation by the noticing counsel. If any other counsel desires to interrogate a witness on different matters, such counsel shall serve a cross-notice of deposition and designate the areas of reasonably expected interrogation. Such areas shall be considered direct examination by that party, and as to such areas the cost of deposition shall be borne by that party. This shall be without prejudice to any party's right of examination as set forth in the next paragraph.

7.    All depositions shall be conducted with due regard for the physical and emotional condition, health, and disability of the deponent. If an *in extremis* deposition is noticed to be taken outside of the New York City area contrary to Paragraph X.A.1., the noticing

19

party must provide, together with the notice, medical certification that the deponent is unable to travel due to his/her present physical condition. Upon application to the Court, plaintiff's counsel may be required to pay the travel expenses incurred by one, but no more than two, defense counsel in attending any deposition noticed to be taken outside of the New York City area.

**B.**     **Depositions of Plaintiffs**

Depositions shall be limited to depositions of plaintiff, plaintiff's spouse, and up to four co-workers, unless plaintiff intends to call more than those four co-workers as witnesses at trial. No other depositions of plaintiff, members of plaintiff's family, or co-workers shall be had except by order of the Special Master or the Court.

**C.**     **Depositions of Defendants**

**1.**     The parties shall make every effort to use depositions as well as other discovery obtained from defendants in the preparation of other cases both in this State and throughout the country for all purposes as if taken in each action in these cases in accordance with Paragraph XII of this Order. No other depositions of defendants shall be taken in these cases except pursuant to Paragraph X.C.2.

**2.**     By request to the Special Master, any plaintiff may seek to serve notice of intent to take nonrepetitive depositions of defendants' representatives pertaining to issues which were not covered or not adequately covered by prior depositions of that defendant. Objections to said depositions shall be brought by the affected defendant before the Special Master who shall issue a recommended ruling. Appeals from rulings of the Special Master shall be to the Court, as

provided in Paragraph III.B. hereof. All corporate depositions shall be noticed at a time and place convenient to the witness, taking into account the expense to the defendants' witness.

**D.    Multi-jurisdictional Depositions**

Any party may, with leave of the Court, conduct multi-jurisdictional depositions, either within or without this State in connection with other asbestos litigation, with respect to the following categories of witnesses:

1.    any witness having charge of records of associations, trade organizations, Worker's Compensation commissions, insurance company records, or any other group or entity whose records contain documents or whose personnel have knowledge of facts or evidence common to all pending asbestos cases;

2.    state of the art experts; or

3.    corporate officials of the defendants.

## XI.    Videotape Depositions

**A.    Videotape Depositions of Seriously Ill Plaintiffs**

A videotape deposition of a seriously or terminally ill plaintiff whose availability for trial may reasonably be doubted may be promptly taken on notice and without further order of the Court if plaintiff's counsel certifies as to plaintiff's medical condition and in accordance with Paragraph X.A.6. of this Order. Plaintiff's counsel should confer with defendants' liaison counsel appointed for the trial cluster in which plaintiff's case is pending to schedule the deposition with reasonable notice, giving due consideration to plaintiff's medical condition.

Plaintiff shall provide to all defendants medical verification of the disease alleged and such medical and employment records as may be in plaintiff's or his/her attorney's possession prior to the videotape deposition. If notice of the deposition is given seven (7) days or less prior to the date when the deposition is to be taken, notice must be served by fax. In no event shall the taking of the videotape deposition be delayed more than ten (10) days from the date of receipt of plaintiff's counsel's certification and notice to take the videotape deposition except by order of the Court. Plaintiffs shall permit defendants to take an off camera discovery deposition at defendants' expense immediately prior to the videotape deposition.

**B.    Procedures as to Videotape Depositions**

1.    Videotaped depositions may be taken by any party upon service of proper notice of deposition for any use permitted by the CPLR.

2.    Videotaped depositions of deponents who have not been previously deposed and who are not terminally ill may not be taken sooner than fifteen (15) days after the date of the taking of the witness' deposition by off-camera stenographic method ("discovery deposition") unless otherwise agreed to by counsel. Videotape depositions of deponents who have been previously deposed may be taken the day following the completion of the discovery deposition, if such discovery deposition was requested, unless otherwise agreed to by counsel.

3.    When a party taking a deposition, in addition to having the testimony taken stenographically and transcribed, also desires to have the testimony videotaped, the party shall include notice of the videotaping of the deposition in the written notice required.

4.    The videotape deposition shall be taken before a notary public, who will put the witness on oath.

5.    At the beginning of the deposition and prior to the witness taking the oath, the videotape operator shall record an identification sign. As the sign is being recorded, the operator shall, in addition, vocally record the information on the sign. The identification sign shall indicate the caption of the action, the date, the time, and the name of the notary public before whom the videotaped deposition is being taken. After the identification sign has been recorded, each participant shall identify himself or herself on camera, stating clearly the name, the address, and the role of the participant.

6.    After the identification required by Paragraph XI.B.5. has been completed, the witness shall take the oath on camera.

7.    After the witness has taken the oath, testimony shall be taken in accordance with the provisions herein. The taking of such testimony shall be videotaped in its entirety.

8.    During the taking of a videotape deposition, the operator before whom the deposition is taken shall assure that the videotape records the witness in a standard fashion at all times during the deposition, unless all counsel agree otherwise or unless, on motion before the Court, the Court directs otherwise. The operator shall limit the use of videotape camera techniques such as close-up views of the witness or other similar techniques to vary the head and shoulders view which is being recorded for presentation in the courtroom to an initial viewing of the witness and the background and up to two (2) close-up views to demonstrate physical injuries

23

unless otherwise agreed upon or ordered by the Court. As an exception to the foregoing, the operator shall, at the request of the attorney questioning the witness, cause a close-up view of a deposition exhibit to be taken while the witness is being questioned concerning the exhibit.

      **9.**    When a videotape deposition has been taken, the videotape shall be shown immediately to the witness for examination, unless such showing and examination are waived by the witness and the parties.

      **10.**    The notary public before whom a videotape deposition is taken shall cause to be attached to the original videotape recording a certification that the witness was sworn by him or her and that the videotape recording is a true record of the testimony given by the witness. If the witness has not waived his or her right to a showing and examination of the videotape deposition, the witness also shall sign the certification. If the witness has exercised his or her right pursuant to Paragraph XI.B.9. to examine the videotape and, having done so, refuses to certify that the videotape recording is a true record of his testimony, the notary public before whom the videotape deposition was taken shall so note on the certification form and shall further state the reasons given by the witness for refusing to certify that the videotape recording is a true record of his or her testimony. The operator who videotaped a deposition pursuant to the provisions of this Order shall execute the following written certification prior to the beginning of the videotape deposition:

        I _____ hereby affirm that I am familiar with the provisions of the New York City Asbestos Litigation Case Management Order pertaining to videotape depositions and will ensure that the videotaping of this deposition is done in compliance with these provisions and in an impartial manner.

11.    Upon payment of reasonable charges therefor, the operator before whom the deposition was taken shall furnish a copy of the videotape deposition in the form of a videotape or an audio recording to any party or to the deponent.

12.    The party taking the deposition shall be responsible for ensuring that the necessary equipment for videotaping the deposition is present at the time the deposition is taken. The party desiring to use the videotape deposition for any purpose subsequent to the taking of the deposition shall be responsible for ensuring that the necessary equipment for playing the videotape deposition back is available when the videotape deposition is to be used.  When a videotape deposition is used during a hearing, a trial, or any other court proceeding, the party first using the videotape deposition in whole or in part shall ensure the availability of the same or comparable videotape playback equipment to any other party for such other party's use in further showing the videotape deposition during the hearing, the trial, or other court proceeding in question.

13.    The cost of the videotape and the cost of recording the deposition testimony on videotape shall be borne by the party taking the videotape deposition.  The ownership of the videotape used in recording testimony shall remain with the party taking the videotape deposition.

14.    A party wishing to take a further videotape deposition, not covered herein, must make application to the Court.

## XII.    Use of Discovery and Depositions from Other Cases

**A.**    Various employees of parties, former employees of parties, and witnesses with knowledge have been deposed in other cases involving alleged asbestos-related personal injuries, and there has been extensive document discovery conducted in other cases involving alleged asbestos-related personal injuries. To avoid undue expense, duplication and unnecessary imposition on counsel, the parties, and the witnesses, parties may utilize depositions taken in other state and federal jurisdictions and cases where a party or a predecessor or successor in interest had notice and opportunity to attend and participate as provided in CPLR 3117. The issue of the admissibility of this deposition testimony at trial against a particular defendant is expressly left for resolution by the trial court.

**B.**    Any party seeking to use any portion of such prior deposition as substantive evidence at trial may, at any time, advise counsel for any party against whom a deposition may be used of the deposition it intends to offer as substantive evidence. Any party objecting to the use of the deposition shall file a statement setting forth the specific objections and grounds within thirty (30) days. Such depositions can be used as if noticed and taken in these cases against those parties or their successors-in-interest. If objection is made, the objecting party shall make an appropriate *in limine* motion setting forth the grounds it asserts for excluding the use of the deposition.

**C.**    All deposition testimony and testimony obtained and admissible in any New York federal court or in any judicial district in the State of New York shall be admissible in the state actions pending in this Court.

26

## XIII.  Docket Lists and Trial Clusters

A.     There will be three dockets: an Accelerated Docket, an Active Docket and a Deferred Docket.   Actions will be set for trial in accordance with Paragraphs XIV ("Accelerated Trial Clusters") and XV ("FIFO Cases") of this Order.

1.     Pursuant to Paragraph XIV of this Order, the Accelerated Docket will be comprised of actions brought by plaintiffs who are terminally ill from an asbestos-related disease with a life expectancy of less than one year.  Cases on the Accelerated Docket will be set for trial in accordance with Paragraph XIV ("Accelerated Trial Clusters").  All other cases will be assigned to the Active Docket or the Deferred Docket.

2.     Pursuant to Paragraph XV of this Order, the Active Docket will be comprised of all actions brought by or on behalf of plaintiffs who have a functional impairment sufficient to warrant trial and meet the minimum criteria set forth in Paragraph XV.A.6. of this Order.  Cases on the Active Docket will be set for trial in accordance with Paragraph XV of this Order ("FIFO Cases").

3.     Pursuant to Paragraph XV of this Order, the Deferred Docket will be comprised of all actions brought by or on behalf of plaintiffs who do not meet the minimum criteria set forth in Paragraph XV.A.6. of this Order.

B.     On or before May 1, 2003, counsel for plaintiffs shall submit to the Special Master and to Special Liaison Counsel, for all remaining cases bearing 1997 and 1998 index numbers, complete lists of (1) the inventory of cases on the Deferred Docket and (2) the inventory of cases on the Active Docket, specifying for each the disease alleged and filing date. The FIFO order date for any case bearing a 1997 or 1998 index number that is certified for an

Active Docket by May 1, 2003 shall be determined by its filing date. The FIFO order date for any such case that is certified for an Active Docket after May 1, 2003, shall be determined by its certification date. The Special Master shall set forth additional certification deadlines for all FIFO cases bearing index numbers from 1999 and afterwards.

        C.     On the 31st of August in each year in which this Order remains in force and effect, or at the request of the Special Master, each of the plaintiffs' firms having asbestos cases pending in the Supreme Court of New York, New York County, shall file with the Special Master a current chronological list of each and every active asbestos personal injury/wrongful death case pending under this Court's jurisdiction. The cases shall be listed by filing date, or, where appropriate, certification date. Plaintiffs in any multi-plaintiff complaint filed under a single index number shall be listed alphabetically under that index number. Copies of the case lists shall be posted on the NYCAL website.

        D.     Plaintiffs are not required to list on their inventories any cases in which only bankrupt defendants remain. Rather, a list of these cases shall be separately provided to the Court and the Special Master, and, thereafter, the Court will establish a "bankrupt" docket to group together and account for these cases.

        E.     All cases pending in the Supreme Court of New York, New York County, presently included in the NYCAL Master File which are not on plaintiffs' case lists or any amendments thereto are hereby dismissed without prejudice. Any case being dismissed pursuant to this paragraph may be reinstated to its chronological position on this Court's asbestos calendar (and deemed filed as of its original date of filing) upon plaintiffs' counsel notifying the Court,

the Special Master and the parties that the failure to list a particular case on a particular firm's inventory filed with this Order was due to inadvertence, mistake, or other good cause.

## XIV.  <u>Accelerated Trial Clusters</u>

A.    The Court, having in mind the directions of, and its discretion under, the provisions of CPLR 3407, will assign for trial on the first Monday in May and the first Monday in November of each calendar year a special Accelerated Trial Cluster of living plaintiffs.  The Accelerated Trial Cluster will be designated on the first Thursday of the preceding December (for May cluster) and June (for November cluster).  Letter applications for assignment to the Accelerated Trial Cluster shall be provided to the Court, the Special Master and defendants (by fax or FedEx) by no earlier than the third Thursday of the preceding September (for May cluster) and March (for November cluster), and no later than ten (10) days before the designation date. Such letter application will be accompanied by a statement that the plaintiff is terminally ill, the nature of the illness, and the plaintiff's life expectancy, if known.  To be eligible for inclusion in an Accelerated Trial Cluster, a plaintiff must be alive and have a pending lawsuit at the time of application.  Unless plaintiffs' counsel seeks an extension of time from the Special Master, counsel must provide to defendants the following information at the time the letter application for assignment to the Accelerated Trial Cluster is made:

1.    answers to interrogatories in the form approved by the Special Master;

2.    responses to standard request for production; and

3.    signed authorizations for medical, employment, social security, disability, workers compensation, union, military and tax records to a mutually agreed upon records retrieval service.

Defendants shall file any objections with the Court and the Special Master, and serve upon plaintiffs (by fax or FedEx) by the first Wednesday of each December and June.

**B.**    Any plaintiff who has failed to file an application and supporting materials for inclusion in a particular Accelerated Trial Cluster within the time periods specified above may make special application to the Special Master for an exception to the provisions of this section in the interest of justice and for good cause shown. The presumption, however, shall be that no cases shall be approved for a given Accelerated Trial Cluster if timely application has not been made, as provided herein. Upon a finding of exceptional circumstances, the Special Master may make recommendations to the Court for inclusion of additional *in extremis* cases in a given Accelerated Trial Cluster.

**C.**    The method of trial of cases assigned to the May and November Accelerated Trial Clusters will be determined by the Court in light of all applicable legal considerations.

**D.**    Each case in an Accelerated Trial Cluster will be prepared strictly in accordance with the discovery order entered for those cases. The discovery order applicable to each particular Accelerated Trial Cluster will be based upon the time line set forth in the model schedule annexed hereto as Exhibit "G." The particular discovery order applicable to a specific Accelerated Trial Cluster will be published by the Special Master together with the list of cases to be included in the cluster.

E.    Failure to meet a deadline in accordance with the applicable discovery order, unless excused by the Special Master in writing within ten (10) days of the deadline for good cause shown, will result in sanctions upon the offending party as set forth in Paragraph XV.E. herein.

## XV.    FIFO Cases

**A.    FIFO Trial Clusters**

Only cases that are on the Active Docket shall be assigned to FIFO Trial Clusters. In order for a case to be placed on the Active Docket it must meet the medical criteria set forth below. For purposes of this Order, the following definitions apply:

1.    A "board-certified pulmonary specialist" or "board-certified internist" means a physician currently actively licensed to practice medicine in one or more of the States of the United States who is currently actively certified by the American Board of Internal Medicine in the Subspecialty of Pulmonary Medicine (pulmonary specialist) or the American Board of Internal Medicine (internist).

2.    A "currently certified B-reader" shall refer to an individual who has successfully completed the NIOSH-sponsored X-ray interpretation course and whose NIOSH-certification is up-to-date.

3.    "ILO grade" shall refer to the radiological ratings of the International Labor Office set forth in "Guidelines for the Use of ILO International Classification of Radiographs of Pneumoconioses" (1980).

4.     "Chest X-rays" means chest films taken in four views (PA, Lateral, Left and Right Oblique) that are graded quality 1 for reading according to the ILO criteria.

5.     "Pulmonary Function Testing" shall refer to spirometry, lung volume testing and diffusing capacity testing which conform to quality criteria established by the American Thoracic Society (ATS) and is performed on equipment which meets ATS standards for technical quality and calibration, all as set forth in 20 C.F.R. 718.103 and Appendix B thereto or in the ATS guidelines in 144 *American Review of Respiratory Disease* 1202-18 (1991). Each subject must be tested with and without inhaled bronchodilators, with best values taken. Predicted values for spirometry and lung volumes shall be those published by Morris, *Clinical Pulmonary Function Testing*, 2d ed., Intermountain Thoracic Society (1984).

6.     The "minimum criteria for activation" shall be defined as follows:

<u>Non-Malignant Changes Shown By Testing</u>

(a)     Chest X-rays which, in the opinion of a currently certified B-reader, show small irregular opacities of ILO grade 1/0; *and* pulmonary function testing that, in the opinion of a board-certified pulmonary specialist or internist, shows either:

(i)     FVC $\leq$ 80% of predicted value with FEV-1/FVC $\geq$ 68% (actual value), *or*

(ii)     TLC $\leq$ 80% of predicted value;

*or*

32

(b)    Chest X-rays which, in the opinion of a currently certified B-reader, show small irregular opacities of ILO grade 1/1 or greater; *and* Pulmonary function testing that, in the opinion of a board-certified pulmonary specialist or internist, shows either:

(i)    FVC $\leq$ 80% of predicted value with FEV-1/FVC $\geq$ 65% (actual value), *or*

(ii)    TLC $\leq$ 80% of predicted value;

*or*

(c)    Chest X-rays which, in the opinion of a currently certified B-reader, to a reasonable degree of medical certainty, demonstrate bilateral asbestos-related pleural thickening which has an ILO grade B2 or greater *and* with pulmonary function testing that, in the opinion of a board certified pulmonary specialist or internist, to a reasonable degree of medical certainty shows either

(i)    FVC $\leq$ 80% of predicted value with FEV-1/FVC $\geq$ 68% (actual value), *or*

(ii)    TLC $\leq$ 80% of predicted value, *and* with a statement by a board-certified pulmonary specialist or internist that, based upon a complete review of the claimant's entire medical record, to a reasonable degree of medical certainty, the asbestos-related changes are a substantial contributing factor to the pulmonary function changes;

*or*

33

<u>Non-Malignant Changes Shown by Pathology</u>

    **(d)**    In the case of a claim brought on behalf of a decedent, if representative lung tissue of the decedent is available, a report by a board-certified pathologist, stating that, to a reasonable degree of medical probability, more than one representative section of lung tissue that is unaffected by any other process (*e.g.*, cancer or emphysema) demonstrates a pattern of peribronchiolar or parenchymal scarring in the presence of characteristic asbestos bodies, and that there is no other more likely explanation for the presence of the fibrosis;

*or*

<u>Diagnosis of Cancer</u>

    **(e)**    A diagnosis of cancer, which is demonstrated by a medical report of a board-certified internist, pulmonary specialist, oncologist or pathologist showing the diagnosis as a primary cancer, which states to a reasonable degree of medical certainty that the cancer in question is caused by asbestos exposure.

**B.**    <u>**Active Docket**</u>

    **1.**    A case on the Active Docket shall be clustered and scheduled for trial strictly in FIFO order, except for the first Active Docket cluster described below. For a case on the Active Docket, FIFO order is determined by the date that the action was commenced, *except that*, for any case that

34

**(a)** is commenced after the date of this Order which initially is on the Deferred Docket, and which is later placed on the Active Docket by stipulation or order of the Court granting leave to amend the complaint.

*or*

**(b)** was commenced before the date of this Order but not transferred to the Active Docket by timely stipulation or motion, pursuant to Paragraph B.2, the FIFO order shall be determined by the date of said stipulation or order.

2.  The first Active Docket cluster shall consist of the first 75 cancer cases (not asbestosis) on the Active Docket, selected in strict FIFO order, and shall begin trial on February 2, 2004.

3.  Thereafter, two annual clusters of 150 Active Docket cases shall be clustered to begin trial on the first Monday of each February and August, beginning with August 2, 2004.

## C.    Deferred Docket

1.  The Deferred Docket consists of all actions brought by or on behalf of claimants who do not meet the minimum criteria for activation. All proceedings with respect to cases on the Deferred Docket are stayed, except for stipulations (as described below) to transfer cases to the Active Docket, as hereinafter defined, and motions for leave to amend the complaint (as described below), until further order of the Court.

2.    Any case that, as of the date of this Order, has been commenced but not assigned to either an Accelerated Trial Cluster or a FIFO Trial Cluster is deemed to be on the Deferred Docket, *unless*

(a)    on or before April 1, 2003, for cases bearing 1997 and 1998 index numbers, plaintiffs and Special Liaison Counsel for the defendants (as described below) stipulate that the party allegedly injured from asbestos exposure satisfies the minimum criteria for activation;

*or*

(b)    on or before April 15, 2003,

(i)    the plaintiff(s) (a) move for leave to amend the complaint so as to allege with specificity that the party injured from asbestos exposure satisfies the minimum criteria for activation and (b) annex the requisite documentation to the proposed amended complaint, *and*

(ii)    the Court grants leave to amend the complaint. Leave to amend shall be denied if the minimum criteria for activation have not been satisfied.

3.    Any case that is commenced after the date of this order is deemed to be on the Deferred Docket, *unless* the complaint, as initially filed and served, alleges with specificity that the party claiming injury from asbestos exposure meets the minimum criteria for activation and annexes the requisite documentation as evidence thereof. No plaintiff may file a Request for Judicial Intervention for any Deferred Docket case commenced after the date of this order.

4.    Any case that

(a)    is commenced after the date of this order and initially deemed to be on the Deferred Docket

*or*

(b)    was commenced before the date of this order but not transferred to the Active Docket by timely stipulation or motion, under the procedures set forth above in Paragraph B.2, shall be removed from it and placed on the "Active Docket," as described below, *if*

(i)    plaintiffs and Special Liaison Counsel for the defendants (as hereinafter defined) stipulate that the party allegedly injured from asbestos exposure now satisfies the minimum criteria for activation,

*or*

(ii)    The plaintiff or plaintiff(s) (a) move for leave to amend the complaint so as to allege with specificity that the party injured from asbestos exposure meets the minimum criteria for activation and (b) annex the requisite documentation to leave to amend the complaint. Leave to amend shall be denied and the case shall remain on the Deferred Docket if the minimum criteria for activation have not been satisfied.

D.    **Defense Discovery and Medical Liaison Counsel**

1.    Defendants shall appoint a liaison counsel for discovery for each FIFO Trial Cluster. Defendants may appoint separate liaison counsel for fact discovery and medical

37

discovery in the same FIFO Trial Cluster. These counsel will be identified by letter to the Special Master, with a copy to plaintiffs' counsel and all defense counsel in a particular FIFO Trial Cluster, within seven (7) days of the publication of the list of remaining defendants for that FIFO Trial Cluster.

      2.    The purpose of the appointment of liaison counsel for defendants in a FIFO Trial Cluster is to facilitate implementation of this Order and to minimize the number of disputes which require adjudication by the Special Master and the Court. Defendants' liaison counsel shall be responsible for communication with plaintiffs' counsel on discovery issues, including accommodation of unforeseen problems and scheduling of discovery as necessary outside of the discovery order. Liaison counsel shall have the authority to extend deadlines for the plaintiffs' compliance with discovery deadlines subject to the approval of the Special Master.

      3.    Plaintiffs' counsel shall deliver to defense medical liaison counsel all radiology and pathology materials for cases in the FIFO Trial Cluster in accordance with the discovery schedule.

E.    **Discovery Schedules (Time Lines) and Sanctions**

      1.    FIFO Trial Clusters and discovery schedules will be published by the Special Master on the first Monday of each May for August clusters of the succeeding calendar year and on the first Monday of each November for February clusters of the second succeeding calendar year (*e.g.*, the August 2005 FIFO Trial Cluster and discovery schedule will be published in May 2004 and the February 2006 FIFO Trial Cluster and discovery schedule will be published in November 2004). The discovery order applicable to a particular FIFO Trial Cluster will be based upon the time line set forth in the model schedule annexed hereto as Exhibit "F." Thirty

(30) days after the publication of a FIFO Trial Cluster, plaintiffs shall provide to defendants in these cases a list of all remaining defendants in the cases.

2.    Each case in each FIFO Trial Cluster will be prepared strictly in accordance with the discovery order entered for those cases. Any failure to comply with a deadline in the discovery order for a FIFO Trial Cluster, unless excused by the Special Master in writing within ten (10) days of the deadline for good cause shown or agreed to by liaison counsel and plaintiff's counsel, shall be deemed to be a willful failure to disclose within the meaning of CPLR 3126. The parties will be subject to the sanctions provided herein for failure to comply with the discovery order. The following sanctions will apply, unless good cause is shown for a failure to comply:

a.    Plaintiffs' failure to answer defendants' standard set of interrogatories or respond to defendants' standard requests for production of documents or provide properly executed document authorizations on or before the date provided in the discovery order shall result in those cases in which said material has not been provided being removed from the FIFO Trial Cluster. Any such case will not be again placed on a calendar for trial any sooner than twenty-four (24) months from the original trial date for that case.

b.    Failure to fully answer interrogatories, such as failure to identify lay witnesses (including their last known addresses), or failure to provide the names and addresses, if known, of treating physicians on or before the dates that information is required pursuant to the discovery order will result in preclusion of the witness, except as permitted by Paragraph XV.E.2.c. hereof. Similarly, fact witnesses and parties timely noticed for depositions who are not made available for deposition prior to the closure date set forth in the discovery order shall be precluded, and depositions of fact witnesses who have not been properly identified

39

in interrogatory answers shall not be admissible, except as permitted by Paragraph XV.E.2.c. hereof.

        c.     All parties shall retain the right to file amended answers to interrogatories up to thirty (30) days prior to commencement of jury selection as to information not known or knowable upon reasonable inquiry by the parties or their counsel at the time they initially responded to interrogatories. However, all parties may upon motion to the Special Master add additional fact witnesses upon a showing of good cause and the showing that the addition shall not be to the opposing parties' prejudice.

        d.     Depositions of plaintiffs or plaintiffs' fact witnesses not noticed for dates on or before the closure dates designated in the discovery order will not be taken, except as provided in Paragraph XV.E.2.c. hereof.

        e.     The defendants must file with the Clerk of the Court any third-party complaint pursuant to the deadline established in the discovery order applicable to a particular FIFO trial (as described in Paragraph XV.E.1. hereof). Within three (3) business days of the filing of any third-party complaint, the third-party plaintiff must deliver to the third-party defendant's counsel, if known, a copy of the third-party complaint, the plaintiff's complaint, the plaintiff's interrogatory responses and, if counsel has not previously appeared in the NYCAL, then third-party plaintiff also will provide a copy of this Order. At the third-party defendant's request, the third-party plaintiff shall provide a copy of the plaintiff's deposition transcript at the expense of the third-party defendant. Within three (3) business days of the filing of any third-party complaint, the third-party plaintiff shall deliver to plaintiff's counsel a copy of the third-party complaint. Failure to provide timely notice of the third-party action to the third-party defendant's counsel or to plaintiff's counsel may result in dismissal of the third-party action.

Nothing contained in this paragraph shall alter or alleviate any obligation of the third-party plaintiff regarding service of process as set forth in the CPLR. The third-party plaintiff, however, must deliver to the third-party defendant or its agent any materials necessary to effect service within five (5) business days of the filing of any third-party complaint.

        **f.**    Third-party complaints not filed on or before the filing deadline set forth in the discovery order may only be filed upon motion and with permission of the Special Master or the Court after appeal of a ruling by the Special Master. Any motion to file a third-party complaint after the filing deadline shall be made upon notice to all remaining parties and putative third-parties. The motion must include an affidavit stating when the information used to substantiate the filing of the third-party complaint became available and that such information was not reasonably available prior to the filing deadline.

        **g.**    A defendant's failure to answer plaintiffs' standard and case specific product identification interrogatories and request for production of documents within the deadlines imposed by the discovery order, or a defendant's failure to produce a witness for a permitted deposition of that defendant, shall result in that defendant having all of its defenses stricken as to each plaintiff for whom it fails to provide said discovery.

        **h.**    The testimony of an expert witness whose report and any supporting x-rays and pathology materials reviewed by the expert have not been provided by the deadline in the discovery order is hereby precluded and any report by the expert may not be used for any purpose at trial. Production to defendants of x-rays and pathology materials provided to plaintiffs' experts is ultimately the responsibility of plaintiffs' counsel.

     **i.**    Any previously undeposed (in whole or in part) expert who does not submit to deposition pursuant to timely notice in accordance with the discovery order shall be precluded from testifying in that case.

     **j.**    Any witnesses or exhibits (presuming earlier provisions of the discovery order have been complied with) not identified on or before the discovery order deadline for filing witness and exhibit lists shall be precluded.

     **k.**    Any plaintiff not made available on reasonable notice for independent medical examination at least two weeks prior to the discovery order deadline for defendants' production of expert witness reports will be removed from the FIFO Trial Cluster. No plaintiff shall be required to submit to more than one medical examination at defendants' request within the same discovery period.

     **l.**    Any plaintiff who intends to file a proof of claim form with any bankrupt entity or trust shall do so no later than ten (10) days after plaintiff's case is designated in a FIFO Trial Cluster, except in the *in extremis* cases in which the proof of claim form shall be filed no later than ninety (90) days before trial.

     **m.**    Each plaintiff must purchase a Request for Judicial Intervention ("RJI") within one (1) month of the time the case is listed in a FIFO Trial Cluster. As to those cases in an Accelerated Trial Cluster, as set forth in Paragraph XIV herein, plaintiff must purchase an RJI no later than three (3) months prior to the trial date set in the discovery order applicable to plaintiff's case. Failure to timely file an RJI will result in removal of the case from the FIFO Trial Cluster (or Accelerated Trial Cluster). Any such case will not be again placed on a calendar for trial any sooner than twenty-four (24) months from the original trial date for that case.

**n.**    All Notes of Issue must be filed no later than three months prior to the scheduled trial date.

**3.**    Any party wishing to avail itself of the sanctions provided herein shall make a written application, on notice, to the Special Master. Opposing papers shall be served within five (5) days of receipt of the application. The Special Master will issue a ruling within five (5) days thereafter. Said ruling shall be the law of the case unless relief therefrom is granted by the Court pursuant to an Order to Show Cause.

**F.    Settlement Conferences**

**1.**    The Special Master will convene and conduct mandatory settlement negotiations as in her discretion are needed. The negotiator representing each party at the mandatory settlement conferences must have full authority to negotiate and commit his/her client(s) to settlement or sanctions will be levied.

**2.**    All parties are encouraged and directed to conduct good faith settlement negotiations of an entire trial cluster and not solely individual cases or groups within a particular trial cluster.

**3.**    All parties will negotiate all cases assigned to that particular trial cluster as if they were actually going to trial. Any plaintiffs' attorney who refuses to negotiate all cases assigned to that trial cluster, in good faith, shall be subject to a recommendation of the Special Master and an order of this Court removing from the trial cluster those cases which were assigned to that trial cluster, but not settled. Any such case will not be again placed on a calendar for trial any sooner than twenty-four (24) months from the original trial date for that case. Any defendant who refuses to negotiate all cases assigned to that trial cluster, in good faith, shall be subject to a recommendation of the Special Master and an order of this Court

consolidating all cases for that cluster and any other cases the Court deems appropriate for trial as to that defendant (or those defendants).

### XVI.  Summary Judgment Motions

1.    Defendants' "formal" motions for summary judgment based on lack of product identification should not be filed in a particular case until (1) the case has been assigned to a trial cluster, (2) that defendant has responded to the plaintiffs' product identification discovery, if served, and (3) until ten (10) days after that defendant has made a request for dismissal pursuant to Paragraph XVI. 4.

2.    Stipulations of discontinuance should not be served except in connection with settlements.

3.    Not later than thirty (30) days after the scheduled date for completion of plaintiffs' depositions in a cluster, plaintiff's counsel in each case shall notify each defendant against whom plaintiff intends to voluntarily discontinue its action.

4.    Each defendant seeking a discontinuance by reason of notice from plaintiff or otherwise shall submit to plaintiff's counsel for signature, with notice to all parties, a signed No Opposition Summary Judgment Motion ("NOSJM") in the form annexed as Exhibit "H". The moving defendant shall prepare and retain an affidavit or other proof of service on all parties.  No NOSJM shall be served before the scheduled date for the completion of plaintiffs' depositions in a cluster.

5.    Upon receipt of a NOSJM, plaintiff's counsel shall promptly (a) sign the NOSJM and mail a copy to defendant's counsel, or (b) advise defendant's counsel in writing, with a copy to the Special Master, of grounds for not signing the NOSJM.  If defendant's counsel does not receive a response with ten days, counsel shall send a fax or e-mail reminder to

plaintiff's counsel. If a response is not received within five days thereafter, defendant's counsel shall notify the Special Master by telephone or e-mail.

6.     Plaintiffs' counsel shall retain all signed NOSJMs for cases in a cluster in plaintiff order and shall notify the Special Master of each defendant for whom a NOSJM has been signed in each case in a cluster. Plaintiffs' counsel shall make every effort to include all NOSJMs for a cluster in a single timely notification.

7.     Within thirty days from the date of service of the NOSJM by the moving defendant, any cross-claimant who opposes summary judgment dismissing the action shall serve on the Special Master and all parties, written notice of opposition stating grounds for opposing the motion. The Special Master shall thereafter schedule and hear argument on the opposition and shall issue an advisory ruling at the conclusion of the hearing. Any party objecting to the Special Master's advisory ruling shall, with five business days, serve written notice of objection on the Special Master and all parties who participated in the hearing. The objection shall be referred by the Special Master to the Court for a de novo hearing.

8.     When a case is fully resolved, plaintiffs' counsel shall forward all originally signed NOSJMs in that case to this Court to be "so ordered" and filed.

9.     If plaintiffs' counsel fails to reply to the NOSJM request by letter, said defendant shall be free to file a "formal" motion for summary judgment based on product identification grounds.

10.     Formal motions for summary judgment on any grounds other than product identification may be made at any time as provided by the CPLR.

11.     When a plaintiff discontinues an action against a defendant, such defendant shall serve written notice of the discontinuance upon all parties to the action and shall

thereafter be deleted from the lawsuit unless, within thirty (30) days of service of the notice, a co-defendant serves a written objection to the deletion on the ground that it intends to pursue a cross-claim against that defendant.

## XVII.    Punitive Damages

Counts for punitive damages are deferred until such time as the Court deems otherwise, upon notice and hearing.

## XVIII.    Miscellaneous

The Court recognizes that cooperation among counsel and parties is essential for the orderly and expeditious resolution of this litigation. The communication of information among the plaintiffs' counsel, among defense counsel, and among defendants shall not be deemed a waiver of the attorney-client privilege, the protection afforded by the attorney work-product doctrine, or any other privilege to which a party may be entitled. Any cooperative efforts described above shall not, in any way, be used against any of the parties, shall not constitute evidence of conspiracy, concerted action, or any wrongful conduct, and shall not be communicated to the jury. The exchange of information or documents by counsel will not, by itself, render such information or documents privileged.

## XIX.    Death Of Plaintiff

### A.    Accelerated and FIFO Trial Clusters

1.    Counsel for plaintiff shall notify all defendants of the death of plaintiff within 10 (ten) days of learning of plaintiff's death. Such notice shall be made in writing via facsimile with a copy by e-mail to the NYCAL website webmaster for posting on the NYCAL website.

2.    Promptly upon receipt of notice of the appointment of an estate representative ("Notice of Appointment"), counsel for plaintiff shall file and serve an amended complaint.

3.    Promptly upon receiving Notice of Appointment, counsel for plaintiff shall cause new medical release authorization forms to be executed by the estate representative. A copy of Letters of Administration or their equivalent, the executed medical authorizations and the death certificate shall be sent to the medical record provider and medical liaison counsel. If an autopsy has been conducted, medical liaison counsel shall be notified.

4.    Counsel for plaintiff shall send a copy of the death certificate to all defendants as soon as is practicable.

**B.    All other FIFO Cases**

The service of an amended complaint shall be sufficient notice of the death of plaintiff.

**C.    All Cases**

Where an amended complaint has been filed and served, a motion to substitute parties, pursuant to CPLR § 1015, will be deemed to have been made and granted.

The Special Master is hereby directed to post a copy of this Order on the NYCAL website.

*IT IS SO ORDERED*

Dated: February 19, 2003          _____/s/_____
      New York, New York              Helen E. Freedman, J.S.C.

47
